E-FILED
Friday, 21 October, 2005 09:44:43 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOHN BEARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 05-3113 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Petitioner John Beard's Motion under 22 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (d/e 1). On November 27, 2002, a jury convicted Beard of: (1) possession of 500 or more grams of a substance or mixture containing cocaine with intent to distribute, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 1); (2) possession of five or more grams of a mixture or substance containing cocaine base ("crack") with intent to distribute, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 2); and (3) intentionally carrying a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Count 3).

1

This was the second trial in this case. The first trial ended in a mistrial when the jury could not reach a unanimous verdict.

On May 23, 2003, this Court sentenced Beard to 248 months imprisonment, consisting of 188 months on each of Counts 1 and 2, to run concurrently, and 60 months on Count 3, to run consecutively to the sentences on the other two counts. Beard appealed. The Seventh Circuit affirmed the conviction and sentence on January 12, 2004. <u>United States v. Beard</u>, 354 F.3d 691 (7th Cir. 2004). Beard filed a petition for rehearing, which was denied on February 11, 2004. He then filed a petition for a writ of <u>certiorari</u> with the Supreme Court. That petition was denied on June 24, 2004. Beard filed this Petition on May 9, 2005.

Beard asks the Court to set aside his conviction because: (1) his counsel was ineffective; (2) his sentence was based on false testimony concerning the quantity of drugs for which he should be held accountable; and (3) his rights to due process and trial by jury were violated because: (a) certain facts were not alleged in the Superseding Indictment, and (b) the Court determined his sentence based on a preponderance of the evidence presented at the sentencing hearing. For the reasons set forth below, the Court determines that an evidentiary hearing is necessary to consider

Petitioner Beard's claim that his sentence was based on false testimony. Beard, however, fails to present sufficient evidence to secure an evidentiary hearing on the other two claims.

## STATEMENT OF FACTS

On October 12, 1999, a confidential informant reported to law-enforcement officials in Springfield, Illinois, that a local drug dealer, Homer Harris, was going to purchase some cocaine that afternoon from his Chicago drug connection. The transaction was to take place at a Kmart parking lot in Springfield, Illinois. Law-enforcement officials set up surveillance in the parking lot. Shortly after 5:00 p.m., Harris drove into the Kmart parking lot. He drove around the parking lot and then across the street to the parking lot of a Wendy's Restaurant. He parked next to a black 1991 Buick Regal automobile. Beard then got out of the passenger side of the Regal and entered the passenger side of Harris' car. About three minutes later, Beard got out of Harris' car and got back into the passenger side of the Regal. The two automobiles then drove off together.

Harris testified at trial on behalf of the Government pursuant to a cooperation agreement. According to Harris, he drove through the Kmart parking lot to look for police surveillance. After that, he drove across the

street to the Wendy's parking lot and parked next to the Regal. He recognized the Regal from his prior dealings with Beard.

Harris testified that he met Beard through another drug dealer, Marcus Harris. Homer Harris said that he was present on a few occasions when Beard delivered cocaine to Marcus Harris. Homer Harris stated that he started purchasing cocaine from Beard after Marcus Harris was incarcerated. Homer Harris testified that, for at least six months, he purchased at least half a kilogram of cocaine from Beard every two weeks.

Harris testified that when Beard got into Harris' car at the Wendy's parking lot on October 12, 1999, he told Harris that he had a kilogram of cocaine powder. Harris only wanted to purchase half a kilogram of cocaine. The parties agreed that Beard would follow Harris to another location where Harris could inspect the cocaine and the parties could weigh out half a kilogram.

After the two vehicles left the Wendy's parking lot, law-enforcement officials followed them and conducted traffic stops of both vehicles. Harris consented to the search of his vehicle. Inside, officers found a Crown Royal bag containing $12,500 in cash. Harris had an additional $1,300 in his pocket. After the Regal was stopped, the driver identified herself as Tracy

4

Lewis. Beard was the only other occupant of the vehicle. Lewis and Beard both consented to a search of the vehicle. Officers found a hidden compartment behind the center armrest in the back seat. In the compartment, officers found 1,004 grams of cocaine, 16.4 grams of cocaine base, an electronic scale, and a box of plastic sandwich bags.

Officers also found a small derringer in the center console between the driver's seat and the front passenger seat. The derringer was at the bottom of the console compartment underneath several pieces of paper. The paper covering the derringer consisted of: (1) a registration card for the Regal listing a woman named Krystalyn Henry as the owner; (2) a registration card for a different car registered in the name of Diane Howard; (3) a dental identification card for an individual named Charles Henry; (4) a service receipt for the Regal, dated May 12, 1999, with the name of George Harper on it; (5) a receipt for a parking space in the name of Laconda Cowley; and (6) a receipt for June Bug Paging in the name of James Harder.

Officers also found two cellular telephones in the Regal. Beard identified one of the phones as his. Telephone company records showed that in the month preceding October 12, 1999, seventeen calls were placed on nine separate days from Homer Harris' cellular telephone to the

5

telephone claimed by Beard. The last call was placed on October 12, 1999, at 12:30 p.m. Telephone records also showed twelve calls were made from Harris' telephone to the second telephone found in the Regal.

Krystalyn Henry testified as a witness for the Government at the second trial. Henry did not testify at the first trial. At the time of the first trial, she refused to speak to law-enforcement officials. She later agreed to testify shortly before the second trial. She testified that she had been given the Regal by George Harper in September 1998. She testified that she sometimes dated Harper. She testified that she ultimately paid Harper about $1,000 for the vehicle.

Krystalyn Henry testified that she drove the car a few times in January or February 1999. At that time, Beard offered to take the vehicle to have repair work performed on it. Henry had known Beard for about eighteen years. She expected to get the car back when the repairs were completed, but she never saw it again. In early September 1999, she started receiving overdue parking ticket notices for the car. She tried to contact Beard and, ultimately, spoke to him on or about October 11, 1999. She testified that Beard told her he still had the car and would bring it to her, but he never did.

The Government took possession of the Regal after the stop on October 12, 1999. The Government then began a forfeiture proceeding against the car. The Government contacted Henry as the registered owner of the vehicle, but Henry never filed a claim for the car in the forfeiture proceeding.

The Government elected not to call the driver of the vehicle, Tracy Lewis, to testify in the second trial. The Government had called Lewis as a witness in the first trial. Lewis testified in the first trial that Beard told her that he wanted her to drive him to Springfield to meet with Homer Harris because Beard planned to purchase a car from Harris. Lewis had also testified that Beard was a barber in Chicago and that Beard attended church regularly.

At the close of the Government's case in the second trial, defense counsel informed the Court that the Defendant did not intend to put on any evidence. The Court then had a colloquy on the record with Beard outside of the presence of the jury:

> THE COURT: Mr. Beard, do you understand that you have the right to present evidence in your own behalf, to have witnesses testify for you, to present exhibits or documents or photographs or physical items of evidence, just like the Government has had that opportunity?

MR. BEARD:  Yes, ma'am.

THE COURT:  And if there were witnesses that you wanted to have testify and they didn't want to come, the Court would issue subpoenas, which are court orders requiring them to come. So we would assist you in getting witnesses to that extent.  Do you understand that?

MR. BEARD:  Yes, ma'am.

THE COURT:  Your attorneys have just told me, and you were here as well, they have stated in open court that they don't anticipate calling any witnesses or presenting any evidence in your case.  You heard that?

MR. BEARD:  Yes, ma'am.

THE COURT:  Is that agreeable with you?

MR. BEARD:  Yes, ma'am.

THE COURT: Is there anything that you wanted your attorneys to do to represent you that they have not done?

MR. BEARD:  Not at all.

THE COURT:  All right.  Do you also understand that you personally have the right to testify at trial in your own behalf? To take the witness stand and be sworn and tell your side of the case?

MR. BEARD:  Yes, ma'am.

THE COURT:  And it is your choice whether you testify or not. It's entirely up to you.  It's not your lawyers' decision, not my decision, it's your decision.  Do you understand that?

>MR. BEARD: Yes, ma'am.
>
>THE COURT: You also have the right not to testify, as I've expressed to the jurors. And it's fine either way with the Court, but I just want to make sure that you understand you have that choice.
>
>MR. BEARD: Yes, ma'am, I understand.
>
>THE COURT: Okay. Do you want to testify yourself?
>
>MR. BEARD: No, ma'am.

<u>United States v. Beard, Docket No. 02-30040, Transcript of Proceedings (d/e 83) (Transcript)</u> at 200-02. The Court directs that the Transcript be made part of the record of this case. The jury was then brought back into the courtroom, and the defense rested. After retiring, the jury returned verdicts of guilty on all three counts. The jury found that Beard possessed 500 or more grams of a mixture or substance containing cocaine with the intent to distribute, and five or more grams of a mixture or substance containing cocaine base with the intent to distribute; it also found that he knowingly carried a firearm in relation to a drug trafficking offense. <u>Case No. 02-30040 Docket Sheet (d/e 2), Minute entry on November 27, 2002</u>.

The Court held the sentencing hearing on May 23, 2003. The Probation Office had prepared a Presentence Investigation Report (PSR).

A copy of the PSR is directed to be made a part of this record and filed under seal.[1] The Probation Office relied on Homer Harris' trial testimony to find in the PSR that Beard should be held accountable for 8,890 grams of cocaine as relevant conduct. PSR, ¶¶ 18-24. Beard did not object to the PSR, and the Court adopted the findings of the PSR at the sentencing and calculated the Guideline sentencing range based on those findings.

## ANALYSIS

Beard raises three grounds for relief. First, he claims he was denied effective assistance of counsel. He claims that his counsel should have investigated the six individuals whose names appeared on the documents in the console because a plausible defense theory could have been developed that the drugs and gun belonged to one of them. In particular, he claims that his counsel should have investigated Krystalyn Henry and George Harper because he states that Harper and Henry were members of the "P-Stone" street gang and were involved in drug trafficking. He also argues that his counsel should have interviewed Tracy Lewis and called her as a witness. He argues that she could have testified that he was only coming to

---

[1] The Court has been informed that the original PSR has been destroyed. The Probation Office has only retained an unsigned copy in electronic form. The unsigned copy is therefore included in the record.

Springfield to buy a car from Homer Harris, not to conduct a drug transaction.  Second, he claims that his sentence was based on perjured testimony.  Beard argues that Homer Harris perjured himself when he claimed that he had bought several kilograms of cocaine from Beard over a six-month period.  Beard argues that this false testimony violated his rights and resulted in an excessive sentence.  Last, Beard claims that his rights to due process and trial by jury were violated because: (1) the Superseding Indictment did not allege (a) the quantity of drugs for which he was being held accountable, and (b) his prior convictions; and (2) his sentencing hearing was not conducted as a trial by jury with proof beyond a reasonable doubt.

This Court must determine whether Beard is entitled to an evidentiary hearing on his claims.  Section 2255 Rule 8(a).  Beard must file a detailed and specific affidavit which shows that he has actual proof of the allegations, rather than mere unsupported assertions, before he is entitled to an evidentiary hearing.  Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002).

Beard has provided three affidavits to support his Petition.  The first affidavit made by Beard (First Beard Affidavit), recounts his conversation

with his lead counsel, Andrew McGowan, regarding trial strategy. The First Beard Affidavit states, in part:

> 2. Upon visiting Andrew J. McGowan, the lead attorney who represented me in USA v. Beard, we discussed trial strategy. I was told by Mr. McGowan that the burden of proof was upon the government, and that as a defense, he would look for ways to discredit the witnesses of the government.
>
> 3. I informed Mr. McGowan that several people would testify on my behalf as to my character and daily routine. I was then told by Mr. McGowan that they (he and David Mote [McGowan's co-counsel]) thought that no defense would be the best defense.
>
> 4. Also, Mr. McGowan stated that his office had lots of cases with little or no resources, and that they had an investigator, but not the resources to investigate as the government has.
>
> 5. I also asked Mr. McGowan to check into the names, places, and dates that appeared on the documents found in Krystalyn Henry's car. In response, Mr. McGowan simply told me that he didn't see where it would make any difference.
>
> 6. In addition, during my second trial I asked Mr. McGowan if he would call Tracy Lewis as a witness. He said that if the government doesn't call her, why should we.

<u>28 U.S.C. § 2255 Motion; and Memorandum of Law (d/e 1)</u>, Attachment 1, <u>Memorandum of Law</u>, attached <u>Affidavit of John Beard</u>.

Beard's second affidavit (Second Beard Affidavit) states:

> 1. I am the affiant, and I make this affidavit in support

of the motion under 28 U.S.C. § 2255.

    2.    That government witness Krystalyn Henry was a childhood friend.

    3.    That sometime between 1995 and 1998, upon executing a search warrant for George Harper on a residence shared by both Krystalyn Henry and George Harper, Krystalyn Henry was subsequently arrested with a large cache of cash and firearms.

    4.    That both George Harper and Krystalyn Henry are on file with the Chicago Gang Task Force as gang members of the "P-Stones."

    5.    That in 1993 George Harper was released from state prison on drug charges.

<u>Motion to Expand the Record Pursuant to Rule 7(b)(d/e 6)</u>, attached <u>Affidavit of John Beard</u>.

Finally, Beard submits the affidavit of Antonio Shaw. Shaw states:

    1.    I am a federal prisoner housed at Federal Correctional Institution Pekin, Pekin, Illinois.

    2.    I was detained on federal drug charges in the Pike County Jail between June 15th and July 15th, 2001. While there, I heard Homer Harris, Anthony Sistrump, Alfred Reed, and Bobby Martin scheming on how they would set up drug deals with various other alleged drug dealers and place unsubstantiated amounts of drugs on them.

    3.    In particular, I heard Homer Harris state that he had only met John Beard once or twice, but that he would put at least 15-20 kilograms of cocaine on him.

Id., attached Affidavit of Antonio Shaw. The Shaw Affidavit provides a basis for holding an evidentiary hearing on Beard's claim that his sentence was based on false testimony about the quantity of drugs he sold to Homer Harris. The Affidavits do not provide support for the other two grounds raised. The Court will address each of Beard's three grounds in order.

A.     Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Beard must show: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) his counsel's deficient performance prejudiced him resulting in an unreliable or fundamentally unfair outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Beard has failed to present any evidence that would establish either element.

Beard claims that his counsel should have investigated Harper and Henry to develop evidence that would support a theory that the drugs and gun belonged to them. The First Beard Affidavit shows that his counsel elected not to investigate these people, but says nothing to indicate that this decision either failed to meet the objective standard of reasonableness or that Beard was prejudiced thereby. Furthermore, Beard's statements to this Court at the close of the Government's case, quoted above, indicates that

14

Beard agreed with his counsel's decision and had no desire to present any additional evidence.

The Second Beard Affidavit makes assertions about Harper and Henry's alleged involvement in drugs and gangs, but contains nothing to show that Beard based these assertions on his own personal knowledge. As such, the Affidavit fails to provide the required proof to entitle him to an evidentiary hearing on this aspect of his claim.

Furthermore, Beard's counsel made a valid strategic decision that met the objective standard of reasonableness. The Government's evidence clearly showed Beard's involvement in the transaction: (1) an informant identified Homer Harris as a drug dealer; (2) the informant reported that Harris was going to meet his Chicago drug connection: (3) Beard, not Henry or Harper, came from Chicago to Springfield; (4) Harris met Beard, not Harper or Henry; (5) Beard was in the Regal in Springfield, Illinois, with the drugs and the guns, not Harper or Henry; and (6) Beard was the owner of a cellular phone that Homer Harris called regularly, not Harper or Henry. Introducing evidence about Henry and Harper's involvement in drugs would not have changed any of the Government's evidence, and might have actually hurt Beard by linking him further with other drug dealers since he

was driving Henry's car. In light of the Government's evidence, counsel's decision not to pursue some alternate defense theory involving Harper and Henry met the objective standard of reasonableness.

Beard has presented no evidence regarding the other four individuals whose names appeared on the documents found in the Regal. His complaint about his counsel's decision not to investigate these people is pure speculation. Such speculation is insufficient to entitle Beard to an evidentiary hearing.

Last, Beard argues that his counsel should have called Tracy Lewis as a witness. Beard argues that Lewis could have testified that Beard told her he was traveling to Springfield to buy a car from Harris, and that Lewis knew Beard was a barber who attended church regularly. Beard argues that this testimony would have provided an alternate explanation of his presence in Springfield and his reason for meeting with Harris. Beard's counsel, however, could not have called Lewis to testify to these matters. Testimony about what Beard told her would have been inadmissible hearsay. Fed. R. Evid. 801. Lewis testified in the first trial as a witness for the Government. As such, Lewis could testify about things that Beard told her because those statements would be an admission of the party opponent. Fed. R. Evid.

16

801(d)(2). This exclusion to the definition of hearsay would not apply if Beard called her to testify. Thus, Beard's counsel could not have presented evidence through Lewis that Beard came to Springfield to buy a car from Homer Harris. As Beard's witness, Lewis could only have testified that Beard was a barber who went to church regularly. Beard makes no showing that his counsel's decision not to present this kind of character evidence either fails to meet the objective standard of reasonableness or that Beard was prejudiced thereby. Beard is not entitled to an evidentiary hearing on his ineffective assistance of counsel claims.

B.  False Testimony at Sentencing

Beard is entitled to an evidentiary hearing on his claim that his sentence was the result of Homer Harris' alleged false testimony. A person is entitled to habeas relief if the sentencing court relied on materially false information in determining his sentence. Olmstead v. United States, 55 F.3d 316, 319 n. 1 (7th Cir. 1995). Here, the Court adopted the findings in the PSR which were based on Homer Harris' testimony that Harris purchased half a kilogram of cocaine from Beard every two weeks for a six-month period prior to October 12, 1999. The Affidavit of Antonio Shaw provides evidence that Harris was lying. The Court finds that Beard should

17

be given an evidentiary hearing on this question.

C.      Due Process and Right to Trial by Jury

Beard asserts that his Fifth and Sixth Amendment rights to due process and trial by jury were violated because: (1) the quantity of drugs for which he was held accountable and his past convictions were not alleged in the Superseding Indictment brought against him; and (2) the Court, rather than a jury, made factual determinations that affected his sentence.  Every fact that increases the maximum possible penalty, other than existence of a prior conviction, must be alleged in an indictment and proven to a jury beyond a reasonable doubt.  Apprendi v. New Jersey, 530 U.S. 466 (2000).  The Superseding Indictment against Beard, thus, did not need to allege the existence of prior convictions even if those convictions affected the sentence.  Id.  Furthermore, Count 1 of the Superseding Indictment alleged that he possessed 500 or more grams of a mixture or substance containing cocaine with intent to distribute, and Count 2 alleged that he possessed five or more grams of a mixture or substance containing cocaine base with the intent to distribute.  Those allegations, if proven, would subject Beard to a maximum possible penalty of forty years for each count.  21 U.S.C. § 841(a)(1) & (b)(1)(B).  Count 3 alleged that Beard carried a weapon in relation to the

drug trafficking crimes. If proven, those allegations in Count 3 subjected him to a mandatory five year, consecutive sentence. 18 U.S.C. § 924(c). The jury found beyond a reasonable doubt that he: (1) possessed 500 or more grams of a mixture or substance containing cocaine with the intent to distribute; (2) possessed five or more grams of a mixture or substance containing cocaine base with the intent to distribute; and (3) knowingly and intentionally carried a firearm in relation to a drug trafficking offense. The Superseding Indictment, thus, properly alleged the facts necessary to meet the requirements of due process, as set forth in the Apprendi decision, and the jury found that those facts had been proven beyond a reasonable doubt.

Petitioner relies on United States v. Booker, and Blakely v. Washington, for the proposition that his sentencing hearing should have been conducted as a trial by jury with proof beyond a reasonable doubt. Booker, __U.S.__, 125 S.Ct. 738 (2005); Blakely, 542 U.S. 296 (2004). The rules announced in Blakely and Booker may not be used retroactively as a basis for collateral review at this time. McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); Morris v. United States, 333 F.Supp.2d 759 (C.D. Ill. 2004). Thus, Beard is not entitled to relief on these grounds.

THEREFORE, the Court determines that Beard is entitled to an

evidentiary hearing on his claim that the Court relied on false testimony at sentencing to determine the quantity of drugs for which Beard should be held accountable. The Court hereby appoints Howard Feldman as counsel to represent Petitioner Beard in this proceeding. Attorney Feldman is directed to review this matter, and contact the Court by November 15, 2005, to set a scheduling conference for the evidentiary hearing. The remainder of the Petition is denied.

IT IS THEREFORE SO ORDERED.

ENTER: October 20, 2005.

    FOR THE COURT:

        s/ Jeanne E. Scott
        JEANNE E. SCOTT
        UNITED STATES DISTRICT JUDGE